William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
228 East 45th Street, 17th Floor
New York, New York 10017
Phone: (212) 286-1425; Fax: (646) 688-3078

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ELAINE HANCHARD-JAMES, Individually
and on Behalf of All Other Persons Similarly
Situated,

                          Plaintiff,

       -against-

THE BROOKDALE HOSPITAL MEDICAL
CENTER, THE BROOKDALE UNIVERSITY
HOSPITAL AND MEDICAL CENTER,
ALTHEA BAILEY, and JOHN DOES
#1-10,

                        Defendants.

-----------------------------------------------------------------X

ECF

12 Civ. 01922-BMC

**FIRST AMENDED**
**COMPLAINT AND**
**JURY DEMAND**

Plaintiff ELAINE HANCHARD-JAMES ("Plaintiff"), on behalf of herself, individually

and as a class representative of all other employees similarly situated, by and through her

attorney, complains and alleges for her amended complaint against THE BROOKDALE

HOSPITAL MEDICAL CENTER, THE UNIVERSITY HOSPITAL AND MEDICAL

CENTER, ALTHEA BAILEY, and JOHN DOES #1-10 (together "Defendant") as follows:

## NATURE OF THE ACTION

1.      Plaintiff alleges on behalf of herself and other similarly situated current and

former employees of Defendant who elect to opt into this action pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages from

Defendant for work for which they did not receive overtime premium pay, as required by law,

and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*

2.      Plaintiff further complains on behalf of herself, and a class of other similarly situated current and former employees of the Defendant, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendant for overtime wages, and/or spread of hours premium pay, as required by the New York Labor Law §§ 650 *et seq*. and the supporting New York State Department of Labor regulations.

3.      Plaintiffs are nurses who were paid hourly and were only paid for their scheduled shift and were not paid any wages for numerous hours that they worked (a) during the 1 hour and 15 minute meal period which was not included their shift, and (b) not paid for hours worked after the end of their scheduled shift.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391.

5.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

6.      Plaintiff ELAINE HANCHARD-JAMES is an adult individual, residing in Kings County, New York.

7.      Upon information and belief, Defendant THE BROOKDALE HOSPITAL

2

MEDICAL CENTER, and Defendant THE BROOKDALE UNIVERSITY HOSPITAL AND

MEDICAL CENTER (collectively the "Corporate Defendant"), are corporations, organized and

existing under the laws of the State of New York, conducting business in Kings County, at

Brookdale Plaza, Brooklyn, N.Y., 11212.

8.      Upon information and belief, Defendant ALTHEA BAILEY, is a supervisor for

the Corporate Defendant, who participated in the day-to-day operations of the Corporate

Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA,

29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New

York Labor Law and is jointly and severally liable with the Corporate Defendant.

9.      Upon information and belief, John Does #1-10 represent the officers, directors

and/or managing agents of the Corporate Defendant, whose identities are unknown at this time

and who participated in the day-to-day operations of the Corporate Defendant and acted

intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and

regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec.

2 and the regulations thereunder and are jointly and severally liable with the Corporate

Defendant.

## COLLECTIVE ACTION ALLEGATIONS

10.     Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute her FLSA claims as a

collective action on behalf of all persons who are or were formerly employed by Defendant at

any time since April 18, 2006 to the entry of judgment in this case (the "Collective Action

Period") (period tolled for failure to post notice and to provide discovery related to underlying

state class action members who are covered by a 6 year limitations period), who were non-

3

exempt employees within the meaning of the FLSA and who were not paid overtime compensation at rates not less than one and one-half times their regular rate of pay for hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

11.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 50 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

12.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

13.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

14.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

a.      whether the Defendant employed the Collective Action members within the meaning of the FLSA;

b.      whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

c.      what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.      whether Defendant failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiff is employed, in violation of C.F.R. § 516.4;

e.      whether Defendant failed to pay the Collective Action Members, overtime compensation for hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.      whether Defendant's violations of the FLSA are willful as that term is used within the context of the FLSA;

g.      whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorney's fees; and

h.      whether Defendant should be enjoined from such violations of the FLSA in the future.

15.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

16.     Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

17.     Plaintiff brings her New York Labor Law claim on behalf of all persons who were employed by Defendant at any time since April 18, 2006, to the entry of judgment in this case (the "Class Period"), and who were non-exempt employees within the meaning of the New York Labor Law and have not been paid hourly wages for all hours worked by them, spread of hours pay for hours worked a spread of ten (10) or more hours in a day, as well as overtime wages in violation of the New York Labor Law (the "Class").

18.     The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there at least 50 members of Class during the Class Period.

19.     The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

20.     The Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

21.     Plaintiff is committed to pursuing this action and has retained competent counsel

experienced in employment law and class action litigation.

22.    Plaintiff has the same interests in this matter as all other members of the Class and Plaintiff's claims are typical of the Class.

23.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.    whether the Defendant employed the members of the Class within the meaning of the New York Labor Law;

b.    whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiff and members of the Class;

c.    what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.    whether Defendant failed and/or refused to pay the members of the Class, hourly wages for all hours worked by them, an extra hour of pay for each day on which members of the Class worked a spread of ten (10) or more hours, as well as premium pay for hours worked in excess of forty (40) hours per workweek within the meaning of the New York Labor Law;

e.    whether the Defendant is liable for all damages claimed hereunder, including but not limited to compensatory damages, interest, costs and disbursements and attorney's fees; and

f.    whether the Defendant should be enjoined from such violations of the New York Labor Law in the future.

## STATEMENT OF FACTS

24.     Plaintiff ELAINE HANCHARD-JAMES (hereafter "James"), was employed full time by The Brookdale Hospital Medical Center, The Brookdale University Hospital and Medical Center, and Althea Bailey (together "Defendant") as a Registered Nurse ("RN") for a number of months from about August 2008 until about January 2011 (the "time period").

25.     During the time period, James worked for Defendant at The Brookdale Hospital Medical Center, located at One Brookdale Plaza, Brooklyn, N.Y. 11212.

26.     During the time period, James was given a list of assignments to be completed before James could go home.  These assignments included, among other tasks, drawing blood, administering medication, monitoring patients, and documenting all activities.

27.     At the beginning of the time period, starting August 2008, James was paid $37.50 per hour.  Later, her hourly rate was increased to $40.00 per hour.

28.     During the time period, James generally worked on a rotating five to six days a week schedule.

29.     During the time period, James generally worked on a scheduled evening tour, from about 4 p.m. until about 12:15 a.m.

30.     During the time period, in addition to James's scheduled five day tour, James was scheduled to work an additional day.   James was paid overtime for the hours scheduled to work on this additional day.

31.     During the time period, James generally worked 60-70 hours per week.

32.     During the time period, James was generally only paid time and one half her hours worked over forty (40) in a workweek ("overtime"), for the hours for which Defendant gave her credit.

33.     During the time period, James clocked-in and clocked-out of her job using a fingerprint time clock.

34.     During the time period, James generally worked past her scheduled tour time, and worked until about 12:30 a.m. to 1:30 a.m.

35.     Although James was generally scheduled to clock-out at 12:15 a.m., James generally did not clock-out until about 12:30 a.m. to 1:30 a.m.

36.     James was required to work past her scheduled tour because James was required to complete work and documentation duties before stopping work.

37.     James was responsible for nine patients.  For each patient, James was required to complete a general assessment prior to the patients' mealtime, which took place at about 5:00 p.m.  A general assessment included, among other things, a neurological assessment, heart monitoring, mobility/ambulatory check, blood pressure and blood glucose check, skin condition check, and a review of vital signs.

38.     After the general assessments were completed, the patients had their mealtime. During the patient mealtime, James had to do rounds, in order to make sure that patients were eating, and not experiencing gastrointestinal problems.  James also had some patients on tube-feeds.

39.     After the patient mealtime, James had to again do rounds to administer medication.  Medication time including, among other tasks, blood transfusions, intravenous (IV) fluids, IV infusion, oral medication, and antibiotic shots.

40.     During the time period, James was required to stop what she was doing and assist anyone who needed help during an emergency situation.

41.     During the time period, James was also required to go to the pharmacy and pick up additional medication.

42.     James was required to check the charts of her patients on an hourly basis for potential doctor updates.

43.     James was also responsible for the admission of new patients.

44.     The admission process would take about 45 minutes to an hour, per new patient.

45.     The process included a total body system assessment, patient documentation, and blood drawing.

46.     James was also required to assist with transporting the critically ill patients to and from diagnostic procedures, and James often was required to stay with the patient until the procedure was completed.

47.     During the time period, James was required to give the critically ill patients, on ventilators, bed baths.

48.     At 10:00 p.m., James was required to make another medication round.

49.     During the later period of the tour, James generally commenced working on her daily documentation.  This documentation included chart updates of all the patients.  Each patient needed a list of daily activities.

50.     Additionally, on days that patients had emergency cardiac arrests, James had to fill out CODE paperwork.

51.     Due to all of James's regular responsibilities, the documentation, additional CODE paperwork, occasional emergencies, and understaffing, James generally worked past her scheduled tour.

52.     During the time period, Defendant failed to pay James any wages for her hours worked after the end of her scheduled tour.

53.     During the time period, Defendant failed to pay James spread of hours premium pay for hours worked at least ten hours apart.

54.     During the time period, Defendant did not post any notice indicating that RN employees had a right to minimum wages and/or overtime.

55.     During the time period, James did not have a meal break because James was always on call during her meal break.

56.     As a RN, James had to always be ready and willing to provide needed assistance if an emergency occurred.

57.     As a result, during the time period, James often was called back to work before her meal break was over.

58.     Defendant deducted an hour and fifteen minutes each day from James's hours worked ("meal deduction").

59.     Defendant's meal deduction was illegal because James and similar nurse employees were on call during the meal break and often worked during the meal breaks.

60.     During the time period, James generally complained to her supervisor, Althea Bailey ("Bailey"), on a monthly basis, about not being paid for hours worked past her scheduled tour.

61.     Bailey ignored James's complaints.

62.     During the time period, James also complained to her union, 1199 SEIU, about not getting paid for her hours worked past her scheduled tour.

63.     Specially, James complained numerous times to Brian Joseth ("Joseth"), 1199 SEIU's union representative of Registered Nurses, about (1) not getting paid for her hours worked past her scheduled tour, (2) not having enough nursing staff at the hospital, and (3) not receiving a meal break because she was always on call during the meal break.

64.     Joseth disregarded James' complaints and therefore generally did not respond to her numerous complaints.

65.     Upon information and belief James worked for Defendant with at least 50 other similar RN employees who performed similar work as James.

66.     James duties as a RN did not include managerial responsibilities.

67.     In addition to James, during the time period, James is aware and has personal knowledge of other persons employed by Defendants as RNs who performed the same or similar work as James, and were paid an hourly rate.  Upon information and belief, Defendants hired at least 50 of such similar RNs.

68.     James and the other similar RN employees regularly worked more than forty (40) hours per week for Defendant.

69.     James and these other similar RN employees worked more than forty (40) hours per week and were paid an hourly rates for scheduled hours worked, and were paid overtime for scheduled overtime hours, but were not paid any wages for hours worked outside of their scheduled tour hours or for hours working or being on call during meal breaks.

70.     James knows that others like her were not paid any wages, overtime wages, or spread of hours pay for hours worked past their scheduled tour by Defendant because James frequently discussed the issue with these other similar RN employees, who all said that they

worked past their scheduled tour time and were never paid any wages by Defendant for these hours worked.

71.   Throughout the time period that James worked for Defendant, and, upon information and belief, both before that time and continuing until the present, Defendant has likewise employed other individuals, like James, in positions as RNs.

72.   Such individuals have worked in excess of forty (40) hours a week and/or in excess of a spread of ten hours, yet the Defendant has likewise willfully failed to pay them any wages for their hours worked past their scheduled tour, and overtime compensation of one and one-half times their regular hourly rate and an extra hour of pay for each day on which they worked a spread of hours over ten hours.

### FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT

73.   Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

74.   At all relevant times, Defendant has been and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

75.   At all relevant times, Defendant employed, and/or continues to employ, Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

76.   Upon information and belief, at all relevant times, Defendant has had gross revenues in excess of $500,000.

77.   Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C.

§216(b).  The named Plaintiff's written consent is attached hereto and incorporated by reference.

78.     At all relevant times, the Defendant had a policy and practice of refusing to pay overtime compensation to its employees for their hours worked in excess of forty (40) hours per workweek.

79.     As a result of the Defendant's willful failure to compensate its employees, including Plaintiff and the Collective Action members, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, the Defendant has violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

80.     As a result of the Defendant's failure to record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action members, the Defendant has failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

81.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

82.     Due to the Defendant's FLSA violations, Plaintiff and the Collective Action Class are entitled to recover from the Defendant, their overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorney's fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

14

## SECOND CLAIM FOR RELIEF
## NEW YORK LABOR LAW

83.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

84.     At all relevant times, Plaintiff and the members of the Class were employed by the Defendant within the meaning of the New York Labor Law, §§ 2 and 651.

85.     Defendant willfully violated Plaintiff's rights and the rights of the members of the Class, by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, and failing to pay an extra hour of pay for spread of hours, in violation of the New York Labor Law and its regulations.

86.     The Defendant's New York Labor Law violations have caused Plaintiff and the members of the Class, irreparable harm for which there is no adequate remedy at law.

87.     Due to the Defendant's New York Labor Law violations, Plaintiff and the members of the Class are entitled to recover from Defendant their unpaid wages, unpaid overtime compensation, reasonable attorney's fees, and costs and disbursements of the action, pursuant to New York Labor Law § 663(1).

88.     Plaintiff and the other members of the class are owed spread of hours damages as a result of their working a spread of more than ten (10) hours on many days.

15

**PRAYER FOR RELIEF**

Wherefore, Plaintiff on behalf of herself and all other similarly situated Collective Action Members and members of the Class, respectfully request that this Court grant the following relief:

a.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

b.    An order tolling the statute of limitations;

c.    Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and her counsel to represent the Collective Action members;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

e.    An injunction against the Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of unpaid wages, unpaid overtime compensation due under the FLSA and the New York Labor Law;

g.    An award of spread of hours damages equal to an additional hour of pay for each

16

day on which a plaintiff worked a spread of more than ten (10) hours;

h.       An award of liquidated and/or punitive damages, as a result of the Defendant's

willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and the New

York Labor Law;

i.       An award of prejudgment and postjudgment interest;

j.       An award of costs and expenses of this action together with reasonable attorney's

and expert fees; and

k.       Such other and further relief as this Court deems just and proper.


## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the amended complaint.


Dated: New York, New York
       June 26, 2012


                         LAW OFFICE OF WILLIAM COUDERT RAND


               By:       _____
                         William Coudert Rand (WR 7685)
                         LAW OFFICE OF WILLIAM COUDERT RAND
                         488 Madison Avenue, Suite 1100
                         New York, New York 10022
                         Telephone: (212) 286-1425
                         Facsimile: (646) 688-3078
                         *ATTORNEY FOR PLAINTIFF*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of _Brookdale Family Care Centers, Inc. & Althea Bailey_ To pay me minimum wages and/or overtime wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

_& The Brookdale Hospital Medical Center_
_The Brookdale University Hospital and_
_Medical Center_

E Hanchard-James RN
**Printed Name**

E HJames RN
**Signature**

4-9-2012
**Date**

7